UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NATIONWIDE TRADE INC.<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, U.S. DEPARTMENT OF AGRICULTURE FOOD AND NUTRITION SERVICE, RETAILER OPERATIONS DIVISIONS,<br>　　　　　　　　　Defendant. | Case No. 21-cv-10275<br>Honorable Shalina D. Kumar<br>Magistrate Judge Anthony P. Patti |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 20)**

I. **PROCEDURAL HISTORY**

**A.**

Plaintiff Nationwide Trade Inc., which operates Complete Dollar Store, a retail convenience store in Detroit, Michigan, filed the instant action seeking judicial review of the U.S. Department of Agriculture's Food and Nutrition Service (FNS) determination that plaintiff trafficked in Supplemental Nutrition Assistance Program (SNAP)[1] benefits and the

---

[1] SNAP is known colloquially as the food stamp program.

decision to permanently disqualify plaintiff from participation in the program. ECF No. 1. Plaintiff also asserted that the FNS actions under SNAP regulations violated its due process and Eighth Amendment rights. *Id.* The matter comes before the Court on defendant's motion for summary judgment. ECF No. 20. Plaintiff filed a response brief opposing defendant's motion and defendant filed a reply brief in further support of its motion. ECF Nos. 28, 29. The Court has reviewed the pleadings and heard oral argument from the parties at a hearing held on May 25, 2022.

**B.**

In February 2018, the FNS issued a letter to plaintiff charging it with trafficking in SNAP benefits.[2] ECF No. 20-4. The charge letter resulted from an investigation triggered by the FNS's computerized fraud detection system, known as ALERT, identifying suspicious benefit redemption patterns at Complete Dollar Store in 2017. ECF No. 20-2. The investigation included a visit to the store, photographs, an interview of Hussein Fawaz, plaintiff's president, and a manual analysis of data. *Id.*; ECF No. 20-11, PageID.2540-2547. The charge letter advised plaintiff that the penalty for

---

[2] Trafficking is defined as any number of fraudulent schemes including buying, selling, stealing, or otherwise exchanging SNAP benefits issued or accessed via Electronic Benefit Transfer (EBT) cards for cash or consideration other than eligible food. 7 C.F.R. § 271.2.

SNAP trafficking is permanent disqualification from SNAP participation, but that plaintiff could pay a civil monetary penalty in lieu of permanent disqualification if it met certain regulatory criteria and requested it within ten days of receipt of the charge letter. ECF No. 20-4, PageID.1399; *see* 7 C.F.R. § 278.6(i). Plaintiff requested and was granted an extension of time to dispute the trafficking charge but was notified that the time to request a civil monetary penalty could not be extended. ECF No. 20-5, PageID.1410. Plaintiff did not request a civil monetary penalty within the ten days. ECF No. 20-11, PageID.2547.

In November 2020, FNS permanently disqualified plaintiff from participating in SNAP. ECF No. 20-8. Plaintiff requested an administrative review its disqualification and submitted a brief to support its request for review. ECF No. 20-10. On January 4, 2021, the Administrative Review Branch of the FNS upheld permanent disqualification in its Final Agency Decision. ECF No. 20-11. Plaintiff timely commenced this action for judicial review. ECF No. 1. Defendant's motion for summary judgment is now ripe for determination by the Court. ECF Nos. 20, 28, 29.

## II. FACTUAL BACKGROUND

Complete Dollar Store began operating in August 2016 and was authorized to accept SNAP benefits as payment for eligible food items

beginning in October 2016. ECF Nos. 20-2, PageID.1366-67; 20-6, PageID.1414; 28, PageID.2604. Complete Dollar Store stocked a variety of food items, including milk, juices, water, cereals, canned goods, chips, and nuts. ECF No. 20-7, PageID.1965; ECF No. 20-10, PageID.1984. The store did not stock fresh meat, poultry, or seafood, fresh produce, infant formula or infant cereal, or dairy products such as sour cream, yogurt, cottage cheese, or ice cream. ECF No. 20-7, PageID.1965-66. Complete Dollar Store also sold non-food items including tobacco products, lottery tickets, automobile products, health and beauty items, paper goods, and cleaning products. ECF No. 20-2, PageID.1370.

As noted above, FNS's ALERT system identified suspicious redemption patterns at Complete Dollar Store, which triggered a manual analysis of redemption data for the store for the months of August through December 2017. ECF No. 20-2. FNS also conducted an on-site visit to survey and photograph the store and interview the owner in December 2017. *Id.* The store inspection and photographs revealed that Complete Dollar Store had a single check-out area, enclosed entirely in a plexiglass barrier. *Id.,* PageID.1368. Merchandise on top and underneath the checkout counter further limited checkout space. *Id.* The store had two registers, and one or two EBT/Credit Card scanners, no optical scanner,

and no adding machine. *Id.* The inspector noted and photographed the most expensive SNAP eligible food items in the store, namely a 42.5 oz. cannister of ground coffee marked $11.99, a 50 oz. cannister of non-dairy instant coffee creamer marked $9.99, a 3 lb. box of Ritz crackers marked $9.99, and a gallon jug of vegetable oil marked $7.99. *Id.*, PageID.1367-70. The inspector also noted and photographed dusty cans and packages and sparsely stocked shelves. *Id*. The inspector noted that the store sold no hot food, did not have a deli or prepared food section, and did not sell meat bundles, seafood specials, or fruit and vegetable boxes. *Id*, PageID.1370. The inspection noted that there were seventeen other SNAP authorized outlets within a one-mile radius of Complete Dollar Store: one supermarket, one seafood specialty store, four combination grocery/other stores, and eleven convenience stores. *Id.*, PageID.1376.

    The manual analysis of data from Complete Dollar Store revealed at least nineteen sets of rapid and repetitive transactions in a short period of time from the same SNAP account. *Id.*, PageID.1373-74. Rapid, repetitive transactions are multiple purchases from a single account within a few seconds, minutes, or hours in the same twenty-four-hour period. *Id.* The case analysis included a review of three randomly selected SNAP households (accounts). *Id.*, PageID.1389-1397. The reviewed households

each redeemed benefits at convenience stores, combination stores, small grocery stores, supermarkets, and superstores during the August to December 2017 review period. *Id.* The three sampled accounts all spent large dollar amounts at Complete Dollar Store even though it does not carry expensive food items and the households had used their benefits at larger superstores or supermarkets the same day or a day before or after the visit to Complete Dollar Store. *Id.*, PageID.1389. The case analysis concluded that the sampled SNAP account data strongly suggested trafficking occurred at Complete Dollar Store. *Id.*, PageID.1397.

The case analysis also identified 231 excessively large transactions. *Id.*, PageID.1374-75. These were transactions in the amount of $24.00 to $301.50, which were considerably higher than the average $5.43 convenience store transaction in Wayne County, Michigan during the review period. *Id.* The analysis compared plaintiff with three nearby convenience store competitors, finding that plaintiff had more than double the number of individual transactions totaling sixty to ninety dollars, and that plaintiff, with over forty such transactions, was the only authorized convenience store in the group to have any transactions over ninety dollars. *Id.*, PageID.1380-84; ECF No. 20-11, PageID.2544-45.

The case analysis surmised that the dusty cans and sparsely stocked shelves, the inventory of mostly inexpensive snack items, canned goods and beverages, and limited check-out space made the high-dollar purchase amounts flagged by ALERT highly suspicious for trafficking. ECF No. 20-2, PageID.1380. The case analysis concluded that the transaction data and on-site investigation, as analyzed and compared, were evidence that possible trafficking occurred at Complete Dollar Store, and thus warranted a charge letter. *Id.*, PageID.1397.

In response to the charge letter, plaintiff argued that the repetitive transactions noted in the FNS case analysis had legitimate explanations: the SNAP participant forgot an item in the earlier transaction; members of the same household were co-shopping, purchasing items separately during the same visit; or the participant returned for a second purchase. ECF No. 20-6, PageID.1418-19. Plaintiff argued that its clientele has inconsistent transportation and relies on the variety of its inventory to fully satisfy their shopping needs. *Id.*, PageID.1420. It argued that the store was sufficiently provisioned to satisfy the purchase amounts flagged in the case analysis report. *Id.*, PageID.1416. Plaintiff posited that its higher dollar transactions were the result of its larger size and inventory than the convenience stores

with which it was compared. *Id.*, PageID.1422. Finally, plaintiff asserted that analysis of ALERT data is inherently unreliable. *Id.*, PageID.1416-17.

The Final Agency Decision addressed plaintiff's denial of violations by highlighting information from the investigative visit to Complete Dollar Store. The plaintiff's observed operation and facilities revealed no scanners or conveyor belts, five shopping carts and six hand baskets, a small, cluttered checkout counter space, surrounded by barriers with very little surface area to place large purchases and little ability to process more than once customer at a time. ECF No. 20-11, PageID.2540. Plaintiff's observed inventory consisted of SNAP-eligible food items which were predominantly inexpensive and typical for a convenience store. *Id.*

> The inventory carried by [plaintiff] at the time of the store visit would be insufficient for the store to meet current minimum stocking requirements for a SNAP authorized store; the firm carried only three varieties of dairy, and in one of those varieties (cheese) had only two stocking units available. [Plaintiff] did not carry any fresh fruits or vegetables. In the Meat, Poultry or Fish staple food category, [plaintiff] carried only beef jerky, canned meat, canned fish, jerky, three stocking units of eggs and two stocking units of hot dogs/deli meat.

*Id.* The Administrative Review Branch of the FNS concluded that Complete Dollar Store did not offer a superior selection of staple foods, price advantages, package specials, bulk or promotional items, an extensive variety of otherwise unavailable ethnic food items, or special services

rendered compared to other convenience stores that would support its customers' proclivity for making multiple high-dollar transactions there. *Id.*, PageID.2545. "[Plaintiff] failed to provide convincing evidence to establish legitimacy of . . . excessively large transactions, such as itemized cash register receipts . . . . [T]he large volume of transactions for high-dollar amounts is unlikely to indicate a pattern of legitimate food purchases." *Id.* The Final Agency Decision held that the evidence provided by plaintiff provided inadequate explanation for the suspicious transactions and insufficient evidence to legitimize its transaction data. *Id.*, PageID.2547. It held that plaintiff had not convincingly rebutted investigation's determination that it had trafficked in SNAP benefits and permanently disqualified plaintiff from participation in the program according to SNAP regulations. *Id.*

### III. DISCUSSION

### A.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When the moving party has carried its burden under Rule 56(c), its

opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *J & L Liquor, Inc. v. United States*, 2017 WL 4310109, at *6 (E.D. Mich. Sept. 28, 2017) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

SNAP requires permanent disqualification from the program on "the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store." 7 U.S.C. § 2021(b)(3)(B); *see Ganesh v. United States*, 658 F. App'x 217, 219 (6th Cir. 2016) and *McClain's Mkt. v. United States*, 214 F. App'x 502, 505 (6th Cir. 2006). Upon disqualification, a retail food store operator may obtain judicial review by way of a "trial de novo." 7 U.S.C. § 2023(a)(13), (15). "The burden of proof in the judicial review proceeding is upon the aggrieved store to establish the invalidity of the administrative action by a preponderance of the evidence." *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991).

To survive summary judgment in a SNAP disqualification case, a plaintiff "must raise material issues of fact as to *each* alleged violation."

*Ganesh*, 658 F. App'x at 219 (quoting *McClain's Mkt.*, 214 F. App'x at 505) (emphasis in original).

**B.**

Plaintiff argues that summary judgment should be denied because the ALERT system, which triggered the decision to permanently disqualify it from SNAP, is flawed and unreliable. ECF No. 28, PageID.2610-11. In support of this argument, plaintiff cites to evidence that the ALERT system has been found to have been inaccurate up to 25% of the time. *Id.*; ECF No. 28-3.

First, as noted by defendant, the single-page excerpt plaintiff cites to support its assertion that ALERT is inherently unreliable indicates that the ALERT system may not be reflecting all of a retailer's SNAP transactions. ECF No. 28-3. The thrust of the report is that ALERT may actually be omitting suspicious transactions; nothing in the unidentified excerpt supplied by plaintiff suggests that ALERT is fabricating or overstating suspicious transactions. *Id.*

Moreover, even if plaintiff's implications about the flaws in the ALERT system were accurate, they would not be sufficient to show the trafficking determination was invalid. *Brothers Grocery & Deli Corp. v. United States*, 2021 WL 4443723, at *8 (S.D.N.Y. Sept. 28, 2021) (citing *Timsina v. United*

*States*, 2019 WL 3254689, at *3 (D. Vt. July 19, 2019), *aff'd* 835 F. App'x 633 (2d Cir. 2020)) ("[W]holesale attack on ALERT System does not create an issue of fact precluding summary judgment."). The reliability of ALERT as an investigative tool is simply not relevant to the review of trafficking charges because it neither fulfills nor excuses plaintiff's burden of proof. *Id.* Indeed, courts in this district have routinely upheld disqualification determinations based on ALERT data, finding that the statute and regulations expressly allow disqualification decisions to be based upon "evidence obtained through a transaction report under an electronic benefit transfer system." *Hanna v. United States*, 2007 WL 1016988, at *7 (E.D. Mich. March 30, 2007) (quoting 7 U.S.C. § 2021(a) and citing 7 C.F.R. § 278.6(a)). "There simply is no requirement under [SNAP] that a store be caught red-handed engaging in . . . EBT card fraud before it may be disqualified from participating in the . . .program." *Id*. (internal quotation and marks omitted).

Finally, plaintiff's argument that flaws in the ALERT system preclude summary judgment fails because defendant did not rely exclusively on data generated by the ALERT system in making the disqualification determination. As noted in the Final Agency Decision, ALERT is a computerized fraud detection tool that does not itself determine that

trafficking has occurred. ECF No. 20-11, PageID.2546. After ALERT signals suspicious transactions, FNS must still analyze transaction patterns, along with other information from the on-site store visit report including photographs, stock and store lay-out analysis, customer shopping behavior, and comparative data from nearby stores before it makes a determination as to whether trafficking occurred. *Id.*; *see Brothers Grocery*, 2021 WL 4443723, at *8. The Final Agency Decision here explicitly documents that it based the permanent disqualification determination on its full investigation. ECF No. 20-11, PageID.2547. For these reasons, plaintiff's criticism of the ALERT system does not create an issue of fact precluding summary judgment.

### C.

Plaintiff argues that the explanations it offered for the suspicious transactions in response to the charge letter create a genuine issue of material fact sufficient to preclude summary judgment. "Because summary judgment may be defeated only when the plaintiff identifies a genuine factual dispute as to each alleged violation, general statements about customers' shopping patterns or other customer practices are not enough to create a triable issue of fact." *J & L Liquor*, 2017 WL 4310109, at *6 (citing *Tony's Pantry Mart Inc. v. United States*, 2017 WL 514184, at *5–6

(N.D. Ill. Feb. 8, 2017)); *see, e.g.*, *McClain's Mkt. v. United States*, 411 F. Supp. 2d 772, 777 (N.D. Ohio 2005), *aff'd* 214 F. App'x 502 (6th Cir. 2006) (store owner's affidavit, which was not supported by any other evidence, presented no explanation of any of the 149 transactions asserted against plaintiff, but merely asserted general justifications for large expenditures and was thus insufficient to survive summary judgment); *Merrick Deli Corp. v. United States*, 2014 WL 6891944, at *4 (E.D.N.Y. Sept. 30, 2014) (Store's "conclusory assertions and speculative alternative explanations for the evidence in the record does not create a genuine issue as to any material fact."); *AJS Petroleum, Inc. v. United States*, 2012 WL 683538, at *6 (D. Md. Mar. 1, 2012) ("[I]n attempting to refute the Government's fact-based data, [plaintiff] offers only generalized, hypothetical explanations about its sales and business operations during the investigation period," and thus plaintiff "has fallen far short of the specificity required to defeat summary judgment.").

The Court finds the *J & L Liquor* case to be instructive here. Plaintiff in that case offered only "general hypotheses to explain the multiple transactions in short time frames and the excessively large transactions." *J & L Liquor,* 2017 WL 4310109, at *7. It relied solely on the affidavit of its owner, citing no specific examples and providing no data or attempts to

account for the specific transactions identified by FNS. *Id.* The *J & L* court found the generalized, hypothetical explanations for the suspicious redemption activity "insufficient to refute the government's fact-based data, and [that they] fail to meet the specificity required to defeat summary judgment." *Id.*

Like the plaintiff in the *J & L* case, plaintiff here offers only hypothetical explanations for the suspicious redemption activity identified by the FNS case analysis. It suggests that the multiple transactions in a short period are driven by customers forgetting an item or multiple members of single SNAP household shopping together but making their purchases separately. ECF No. 20-10, PageID.1986, 1994. It also suggests that its customers may binge shop or give their SNAP EBT cards to others to use. *Id.,* PageID.1994. It conjectures that the high-dollar transactions identified by FNS may be explained by customers purchasing for funerals, family reunions or birthday parties. *Id.* To support its proposed accounts for the suspicious EBT activity, plaintiff cites no specific examples and offers no document or other evidence to support its theories. Instead, the only evidentiary support plaintiff supplied, at any stage of its challenge, were select articles from industry journals and SNAP research and analysis reports on patterns of benefit redemption and food selection. *Id.*,

PageID.2000-2534. Nothing in these five hundred pages of generalized trade articles and nationwide federal surveys addresses plaintiff's particular operations, facilities, inventory, locations, or customers. Nor can the generic information supplied by plaintiff possibly offer any justification for the nineteen sets of suspicious repetitive transactions and 231 excessively large transactions identified in FNS's investigation of plaintiff's store.

Plaintiff argues that *Betesfa v. United States*, 410 F.Supp.3d 132 (D.D.C. 2019) dictates that summary judgment is not appropriate under the circumstances present here. Indeed, the court in that case denied summary judgment for defendant after plaintiff advanced similar explanations for suspiciously repetitive and large transactions—that its customers engaged in co-shopping and that its inventory and infrastructure were sufficient to support large transactions. *Id.* at 139-40. But the plaintiff in *Betesfa* provided receipts, tax records, and inventory invoices, as well as the declarations of its owner and manager and several of its customers, to support its argument that its customers' purchases were consistent with its inventory and total receipts. *Id.* at 140. Moreover, the government filed its motion for summary judgment in *Betesfa* before the parties conducted discovery. The court determined that, based on the evidence plaintiff provided to support its position, it should be provided with the opportunity to

engage in discovery to dispute the trafficking charge. *Id.* at 141. By contrast, discovery has concluded in this matter[3] and plaintiff has provided no evidence—no receipt, invoice, tax record, or declaration—to raise a genuine issue with respect to any of the suspicious transactions. *See Nakhle v. United States*, 2020 WL 6826367, at *8, n.6 (N.D. Ohio Nov. 20, 2020) (distinguishing *Betesfa*). Plaintiff's speculative explanations for the suspicious transaction data amounts to nothing more than unsupported conjecture. Because plaintiff has failed to present the specific evidence necessary to raise a genuine dispute as to the suspicious activity, summary judgment is appropriate under Rule 56.

### D.

Plaintiff's remaining constitutional claims against defendant may be dismissed because they fail as a matter of law. Plaintiff alleges that defendant violated its Eighth Amendment rights because permanent disqualification constitutes an excessive fine. ECF No. 1. But the loss of an "administratively granted privilege to process third-party benefits" is not a payment as punishment for some offense and thus not a fine for Eighth

---

[3] According to defendant, plaintiff did not conduct any discovery, despite its opportunity to do so. ECF No. 29, PageID.2650.

Amendment purposes. *King Cole Foods, Inc. v. United States*, 561 F. App'x 444, 445 (6th Cir. 2014).

Plaintiff's substantive and procedural due process claims likewise fail as a matter of law. "The test for a substantive due process claim is whether there is a fundamental right at stake, and, if not, whether there exists a rational basis for the deprivation." *United States v. Hughes*, 632 F.3d 956, 962 (6th Cir. 2011). The SNAP statute's anti-fraud regulations do not proscribe fundamental liberties and permanent disqualification under the regulations is supported by a rational basis. *See Alhalemi v. United States*, 224 F. Supp. 3d 587, 593-94 (E.D. Mich. 2016) (citing *Traficanti v. United States*, 227 F.3d 170, 175 (4th Cir. 2000) and *Kim v. United States*, 121 F.3d 1269, 1274 (9th Cir. 1997)). Procedural due process challenges to SNAP disqualification fail because the administrative and judicial review provided under the statute provides "all the process that was due, and more." *Spencer v. U.S. Dep't of Agriculture*, 1998 WL 96569, at *3 (6th Cir. Feb. 27, 1998); *see also Alhalemi*, 224 F. Supp. 3d at 594.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (ECF No. 20) is **GRANTED** and plaintiff's complaint is **DISMISSED** with prejudice.

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: May 31, 2022